ACCEPTED
03-15-00329-CV
5957421
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/7/2015 11:15:32 AM
JEFFREY D. KYLE
CLERK

*ORAL ARGUMENT CONDITIONALLY REQUESTED*

No. 03-15-00329-CV

In the

# Third District Court of Appeals

Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

7/7/2015 11:15:32 AM

JEFFREY D. KYLE
Clerk

GREGORY G. GRAZE AND CYNTHIA A. CRIDDLE, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Appellants,*

v.

NATIONSTAR MORTGAGE, LLC,

*Appellee.*

*Appeal from the 261st Judicial District Court, Travis County, Texas*
*MDL Pretrial Court Cause No. D-1-GN-14-005248*
*Originating from the 160th Judicial District Court, Dallas County, Texas*
*Originating Court Cause No. DC-13-05406*
*MDL Cause No. 13-0427*

## APPELLEE'S BRIEF

B. David L. Foster
  Texas Bar No. 24031555
  *dfoster@lockelord.com*
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 – Facsimile

Thomas G. Yoxall
  State Bar No. 00785304
  *tyoxall@lockelord.com*
W. Scott Hastings
  State Bar No. 24002241
  *shastings@lockelord.com*
Daron L. Janis
  State Bar No. 24060015
  *djanis@lockelord.com*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000
(214) 740-8800 – Facsimile

COUNSEL FOR APPELLEE

## IDENTITY OF PARTIES AND COUNSEL

| **Party** | **Counsel** |
|---|---|

Gregory G. Graze
Cynthia A. Criddle

*Appellants*

J. Patrick Sutton
  State Bar No. 24058143
  *jpatricksutton@jpatricksuttonlaw.com*
1706 W. 10th Street
Austin, Texas  78703
(512) 417-5903
(512) 355-4155 – Facsimile
                *Trial and Appellate Counsel*

Jeffrey W. Hurt
  State Bar No. 10317055
  *jwhurt@hurtberry.com*
HURT & BERRY, LLP
10670 N. Central Expressway, Suite 450
Dallas, Texas  75231
(214) 382-5656
(214) 382-5657 – Facsimile
                *Trial and Appellate Counsel*

David M. Gottfried
  State Bar No. 08231200
  *david@davidgottfried.com*
THE LAW OFFICE OF DAVID M. GOTTFRIED, PC
1505 W. 6th Street
Austin, Texas  78703
(512) 494-1481
(512) 472-4013 – Facsimile
                *Trial Counsel*

Nationstar Mortgage, LLC
              *Appellee*

W. Scott Hastings
  State Bar No. 24002241
  *shastings@lockelord.com*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
(214) 740-8000

(214) 740-8800 – Facsimile

*Appellate Counsel*

B. David L. Foster
  Texas Bar No. 24031555
  *dfoster@lockelord.com*
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas  78701
(512) 305-4700
(512) 305-4800 – Facsimile
*Trial and Appellate Counsel*

Thomas G. Yoxall
  State Bar No. 00785304
  *tyoxall@lockelord.com*
Daron L. Janis
  State Bar No. 24060015
  *djanis@lockelord.com*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
(214) 740-8000
(214) 740-8800 – Facsimile
*Trial and Appellate Counsel*

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..........................................................2

TABLE OF CONTENTS ...............................................................................4

INDEX OF AUTHORITIES ...........................................................................6

STATEMENT OF THE CASE ..........................................................................8

STATEMENT REGARDING ORAL ARGUMENT ....................................................8

ISSUES PRESENTED...................................................................................9

STATEMENT OF FACTS ..............................................................................9

    A.    THE ORIGINAL TERMS OF APPELLANTS' LOANS..................................10

    B.    APPELLANTS' DEFAULTS AND SUBSEQUENT LOAN
        MODIFICATIONS ..............................................................................11

    C.    APPELLANTS' SUBSEQUENT DEFAULTS ................................................13

SUMMARY OF THE ARGUMENT ...................................................................14

ARGUMENT ...........................................................................................17

    A.    STANDARD OF REVIEW ......................................................................17

    B.    APPELLANTS' MODIFICATIONS ARE NOT SUBJECT TO SECTION
        50(A)(6)(L) BECAUSE THEY WERE NOT NEW EXTENSIONS OF
        CREDIT ..........................................................................................17

    C.    APPELLANTS' MODIFICATIONS COMPLY WITH SECTION
        50(A)(6)(L), TO THE EXTENT IT APPLIES .................................................24

    D.    ANY NON-COMPLIANCE WITH SECTION 50(A)(6)(L) WAS CURED
        LONG BEFORE APPELLANTS FILED THIS LAWSUIT ...............................31

    E.    APPELLANTS CANNOT RECEIVE JUDGMENT ON NATIONSTAR'S
        CURE DEFENSE BECAUSE THEY DID NOT REQUEST SUMMARY
        JUDGMENT ON THAT DEFENSE IN THE PRETRIAL COURT .....................33

F. APPELLANTS' ARGUMENTS ARE AT ODDS WITH THE FUNDAMENTAL PURPOSE OF SECTION 50 OF THE TEXAS CONSTITUTION ....................................................................35

PRAYER .........................................................................................36

CERTIFICATE OF COMPLIANCE ....................................................38

CERTIFICATE OF SERVICE .............................................................38

APPENDIX .......................................................................................39

Final Judgment and Order Granting Defendant's Motion for Summary Judgment ............................................................ A

Graze's Texas Home Equity Note ........................................ B

Graze's Loan Modification Agreement ................................ C

Letter from Nationstar to Graze dated September 3, 2012 ................. D

Criddle's Texas Home Equity Note ..................................... E

Criddle's Loan Modification Agreement .............................. F

Letter from Nationstar to Criddle dated March 5, 2012 ..................... G

# INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Cerda v. 2004-EQR1 L.L.C.*,
612 F.3d 781 (5th Cir. 2010) ...................................................................... 26, 27

*Doody v. Ameriquest Mortgage Co.*,
49 S.W.3d 342, 345 (Tex. 2001) ....................................................................... 33

*Fin. Comm'n of Tex. v. Norwood*,
418 S.W.3d 566 (Tex. 2013) ............................................................. 25, 26, 27, 30

*Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries*,
844 S.W.2d 857 (Tex. App.—Texarkana 1992, writ denied) ..................................... 25

*Harris Cnty. Hosp. Dist. v. Tomball*,
283 S.W.3d 838 (Tex. 2009) ............................................................................. 25

*Hawkins v. JP Morgan Chase Bank, N.A.*,
___ F. App'x ___, 2015 WL 3505353 (5th Cir. June 4, 2015) (per
curiam) ......................................................................................... 15, 16, 21, 22

*Montgomery v. Blue Cross Blue Shield of Texas, Inc.*,
923 S.W.2d 147 (Tex. App.—Austin 1996, writ denied) ..................................... 34

*Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*,
515 F.2d 1200 (5th Cir. 1975) ......................................................................... 25

*Sims v. Carrington Mortgage Servs., L.L.C.*,
440 S.W.3d 10 (Tex. 2014) ......................................................................... passim

*Star-Telegram, Inc. v. Doe*,
915 S.W.2d 471 (Tex. 1995) ............................................................................. 16

*Stringer v. Cendant Mortgage Corp.*,
23 S.W.3d 353 (Tex. 2000) ............................................................................... 26

**CONSTITUTION AND STATUTES**

TEX. CONST. art. XVI, § 50(a)(6) ................................................................. 9, 10, 18

TEX. CONST. art. XVI, § 50(a)(6)(C) ..................................................................... 23

TEX. CONST. art. XVI, § 50(a)(6)(D) ................................................................ 23

TEX. CONST. art. XVI, § 50(a)(6)(F) ................................................................. 23

TEX. CONST. art. XVI, § 50(a)(6)(G) ................................................................ 23

TEX. CONST. art. XVI, § 50(a)(6)(L) ............................................................. 9, 14

TEX. CONST. art. XVI, § 50(a)(6)(L)(i) .............................................. 26, 27, 30, 33

TEX. CONST. art. XVI, § 50(a)(6)(Q)(x)(c) ................................................... 9, 31

**OTHER AUTHORITIES**

7 TEX. ADMIN. CODE § 153.1(1) ................................................................ 29, 31

7 TEX. ADMIN. CODE § 153.11(3) ................................................................... 29

7 TEX. ADMIN. CODE § 153.16(2) ................................................................... 29

TEX. R. APP. P. 43.3 ....................................................................................... 34

## STATEMENT OF THE CASE

This is an appeal from a final summary judgment in favor of Appellee, Nationstar Mortgage, LLC ("Nationstar"). CR:388-90 (Tab A in the Appendix hereto). The judgment ordered that Appellants, Gregory G. Graze and Cynthia A. Criddle, take nothing. CR:388. The judgment was entered by the Honorable Lora Livingston, presiding judge of the 261st Judicial District Court of Travis County, Texas, who had been appointed pretrial judge in a multi-district litigation ("MDL") proceeding of which this case is a part. CR:388-90. This case, which is a putative class action, was originally filed in Dallas County and then transferred to the MDL pretrial court. CR:35-36. This is the first judgment to be issued in the MDL proceeding. Appellants challenge the take-nothing judgment on appeal. *See* Brief of Appellants at 31. They also ask this court to render judgment against Nationstar's cure defense, even though Appellants never requested summary judgment on that defense in the pretrial court. *See id.*

## STATEMENT REGARDING ORAL ARGUMENT

Nationstar does not believe oral argument is necessary for this appeal. The controlling legal issue recently was decided by the Texas Supreme Court in *Sims v. Carrington Mortgage Servs., L.L.C.*, 440 S.W.3d 10 (Tex. 2014), and was correctly applied by the MDL pretrial court in this case. Nevertheless, if this court grants oral argument, Nationstar respectfully requests the opportunity to participate.

## ISSUES PRESENTED

Appellants present a single issue: did the MDL pretrial court err in granting Nationstar's motion for summary judgment? This issue involves three sub-issues, each of which may be dispositive of this appeal in Nationstar's favor. They are:

1.    Do the requirements of TEX. CONST. art. XVI, § 50(a)(6) apply to Appellants' loan modifications?

2.    If the requirements of TEX. CONST. art. XVI, § 50(a)(6) apply to Appellants' loan modifications, do the modifications comply with TEX. CONST. art. XVI, § 50(a)(6)(L)?

3.    If the requirements of TEX. CONST. art. XVI, § 50(a)(6) apply to Appellants' loan modifications, and the modifications do not comply with TEX. CONST. art. XVI, § 50(a)(6)(L), did Nationstar cure the failure to comply under TEX. CONST. art. XVI, § 50(a)(6)(Q)(x)(c)?

## STATEMENT OF FACTS

Although the material facts are undisputed, the Statement of Facts in Appellants' brief contains many irrelevant facts that distract from the simple legal issue that is dispositive of this appeal. It also presents Appellants' *interpretation* of certain undisputed facts in a way that cloaks the *actual*, undisputed facts.[1] Accordingly, Nationstar provides its own statement of facts, as follows:

Gregory G. Graze obtained a home equity loan on September 18, 2003. CR:209. The note was subsequently indorsed, and the security instrument

---

[1] Nationstar is not addressing every mischaracterization of law or fact in Appellants' brief because such arguments simply are not relevant to the issue presented. That does not mean, however, that Nationstar agrees with such arguments.

assigned, to Centex Home Equity Company, LLC, which is now Nationstar. CR:205, 213, 242. Cynthia A. Criddle obtained a home equity loan from Nationstar on December 21, 2006. CR:206, 268. The terms of Appellants' loans are defined in their respective Texas Home Equity Notes, Texas Home Equity Security Instruments, and Texas Home Equity Affidavit and Agreements. CR:238, 297. The Security Instruments secure Appellants' performance of their obligations under the Notes and Security Instruments by creating liens on their respective homesteads. CR:218, 276. Appellants agree that their loans complied with article XVI, section 50(a)(6) of the Texas Constitution ("Section 50(a)(6)") when they were made. *See* Brief of Appellants at 7.

## A. THE ORIGINAL TERMS OF APPELLANTS' LOANS

The original principal amount of Graze's loan was $300,000. CR:209. The original principal amount of Criddle's loan was $100,800. CR:268. Appellants promised to repay the principal, plus interest, in equal monthly installments. CR:209, 268. Graze's interest rate was fixed at 6.500 percent and his monthly principal and interest payments were $1,896.21. CR:209-10. Criddle's interest rate was fixed at 9.190 percent and her monthly principal and interest payments were $824.88. CR:268-69.

**B.** **APPELLANTS' DEFAULTS AND SUBSEQUENT LOAN MODIFICATIONS**

Graze fell behind on his loan when he missed the March 2010 payment because of a slowdown in his business. CR:255, 264. He requested a loan modification from Nationstar the following month. CR:263. Criddle began struggling to stay current on her loan just a few months into the loan. CR:311-15. Her hardship worsened when her husband passed away on February 2, 2009. CR:318. On July 20, 2009, she advised Nationstar that she would not be able to make the August 2009 payment and that she needed a modification. CR:319.

Graze entered into a Loan Modification Agreement dated October 18, 2010, and Criddle entered into a Loan Modification Agreement dated April 27, 2010. CR:245-46, 302-03. Both Loan Modification Agreements capitalized certain arrearages, but the only amounts that were capitalized were past-due interest and escrow advances that were already due and owing under the terms of the respective Notes and Security Instruments at the time they were capitalized. CR:206.

Appellants' modifications temporarily lowered their interest rates to 2.000 percent for two years, during which time they were only required to pay the interest that accrued each month. CR:245, 302. After the interest-only period, Appellants' interest rates returned to what they had been prior to the modifications and their payments returned to being fully amortizing principal and interest payments of the same amount each month until the maturity of the loans. CR:245,

11

302. Because past-due amounts had been capitalized when Appellants' loans were modified, the post-interest-only-period payments were slightly higher than the pre-modification payments had been. *Compare* CR:266 ($2,159.70) *with* D. Appx. 210 ($1,896.21); *compare also* CR:321 ($910.42) *with* CR:269 ($824.88).

The following chart illustrates Graze's scheduled principal and interest payments over the entire life of his loan from origination until anticipated payoff, including the effect of the modification on those payments:



The following chart similarly illustrates Criddle's scheduled principal and interest payments over the entire life of her loan from origination until anticipated payoff, including the effect of the modification on those payments:



As illustrated above, the two-year reductions in Appellants' principal and interest payments following their respective modifications provided them with temporary reprieve so they could work through the hardships that had caused them to default on their respective loans. CR:263-64, 318-19. The modifications also allowed Appellants to cure their defaults and avoid foreclosure. CR:253, 309 (showing loans being brought current by the modifications).

## C. APPELLANTS' SUBSEQUENT DEFAULTS

Following Graze's modification, he stayed current on his loan until October 2012. CR:248-53. Graze subsequently made two more payments, but he has not

made a payment on the loan since December 3, 2012. CR:248. Following Criddle's modification, she stayed current on her loan until November 2012. CR:305-09. Her last payment also was made on December 3, 2012. CR:305.

## SUMMARY OF THE ARGUMENT

Appellants experienced financial hardships that caused them to default on their respective Texas home equity loans. Instead of foreclosing, Nationstar modified Appellants' loans in a way that temporarily lowered their monthly payments so they could work through their hardships. Appellants have responded by suing Nationstar to (1) have the liens on their respective properties invalidated based on the very modifications that allowed them to keep their homes, (2) have all remaining principal and interest on their loans declared forfeited, and (3) require Nationstar to disgorge all principal and interest that Appellants have paid since their respective modifications.[2] CR:176-78. Specifically, Appellants contend that their modifications did not comply with article XVI, section 50(a)(6)(L) of the Texas Constitution ("Section 50(a)(6)(L)") because they provided for a period of interest-only payments and allegedly created a schedule of payments that were not substantially equal. CR:176.

---

[2] Appellants sought the same relief in connection with all loans in the putative class. CR:176.

14

In *Sims v. Carrington Mortgage Servs., L.L.C.*, the Supreme Court of Texas held that "as long as the original note is not satisfied and replaced, and there is no additional extension of credit, as we define it, the restructuring [of a home equity loan] is valid and need not meet the constitutional requirements for a new loan." 440 S.W.3d 10, 11-12 (Tex. 2014). Later, in the same opinion, the Court reiterated that, "[i]f the restructuring of a home equity loan does not involve a new extension of credit, the requirements of Section 50(a)(6) do not apply." *Id.* at 15. The Court then provided a three-pronged test to determine whether a restructuring involves a new extension of credit. Those prongs are whether the restructuring (1) satisfies and replaces the note, (2) advances new funds, or (3) increases the obligations created by the original terms of the loan. *Id.* at 17. Thus, unless a restructuring satisfies one of those prongs, it is not a new extension of credit and the constitutional requirements for home equity loans do not apply. *Id.* at 15.

The United States Court of Appeals for the Fifth Circuit recently found that *Sims* is determinative of the same issue that is presented in this case—*i.e.*, whether a modification of a Texas home equity loan that is not a new extension of credit must comply with Section 50(a)(6)(L). *See Hawkins v. JP Morgan Chase Bank, N.A.*, ___ F. App'x ___, 2015 WL 3505353, at *2 (5th Cir. June 4, 2015) (per curiam). Like Appellants' loans, one of the loans in *Hawkins* was modified to allow interest-only payments for a temporary period, after which the loan would be

re-amortized to be fully paid off in equal installments over the remaining life of the loan. *Id.* at *1. Applying *Sims*, the Fifth Circuit held that, because the restructuring did not satisfy or replace the original note, advance new funds, or increase the obligations created by the original note, it did not require compliance with Section 50(a)(6)(L). *Id.* at *2.

Appellants' claims in this lawsuit fail as a matter of law for the same reason: their modifications do not satisfy any of the prongs in the Texas Supreme Court's test for determining whether a restructuring is a new extension of credit. Thus, Section 50(a)(6)(L) does not apply to the modifications. And even if Section 50(a)(6)(L) does apply, the modifications comply with both the plain language of Section 50(a)(6)(L) and the fundamental purpose of the Texas Constitution's homestead protections, and any failure to comply was preemptively cured by Nationstar in accordance with the specific cure provided in the Texas Constitution.

The MDL pretrial court's judgment must be affirmed if there is any basis upon which summary judgment could have been granted to Nationstar. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). Because the summary judgment was properly based on one or more of the grounds discussed above and herein, Appellants' issue should be overruled and the pretrial court's take-nothing judgment in Nationstar's favor should be affirmed.

16

# ARGUMENT

## A.  STANDARD OF REVIEW

Nationstar agrees with Appellants' statement of the standard of review.  *See* Brief of Appellants at 16-17.

## B.  APPELLANTS' MODIFICATIONS ARE NOT SUBJECT TO SECTION 50(a)(6)(L) BECAUSE THEY WERE NOT NEW EXTENSIONS OF CREDIT

Appellants assert a single cause of action for declaratory judgment, ultimately seeking a declaration that the liens securing their loans were invalidated as of the respective dates of their modifications and that Nationstar must forfeit all principal and interest on the loans, including disgorging all principal and interest paid by Appellants after the modifications.  CR:176-77.  The declaration Appellants seek is premised on their underlying contention that the modifications did not comply with Section 50(a)(6)(L).  CR:176-77.  Specifically, Appellants argue that Section 50(a)(6)(L) does not allow a modification to provide for a period of interest-only payments.  CR:176-77.  They also contend that their modifications did not comply with Section 50(a)(6)(L) because they included "balloons" that were more than twice the average of the interest-only payments.  CR:176-77.  As discussed in this section, both contentions fail as a matter of law under *Sims v. Carrington Mortgage Servs., L.L.C.*, 440 S.W.3d 10 (Tex. 2014).

Appellants do not dispute the fact that their loans complied with Section 50(a)(6)(L) when they were made.  *See* Brief of Appellants at 7.  Rather, they

contend that it was the modifications that did not comply with Section 50(a)(6)(L). CR:176. Because Appellants' claims are based on the modifications' alleged non-compliance with Section 50(a)(6)(L), the first issue that must be decided is whether Section 50(a)(6)(L) even applies to the modifications.

The Texas Supreme Court's opinion in *Sims* makes clear that Section 50(a)(6)(L) does not apply to the modifications. In *Sims*, the Fifth Circuit asked the Texas Supreme Court four certified questions about whether the restructuring of a Texas home equity loan to include past-due amounts as principal is subject to the requirements of article XVI, section 50(a)(6) of the Texas Constitution ("Section 50(a)(6)"). *See* 440 S.W.3d at 11 ("The United States Court of Appeals for the Fifth Circuit has asked whether those requirements apply to such loan restructurings."). The Court answered that "as long as the original note is not satisfied and replaced, and there is no additional extension of credit, as we define it, *the restructuring is valid and need not meet the constitutional requirements for a new loan*." *Id.* at 11-12 (emphasis added).

As presented to the Texas Supreme Court, the first certified question was whether the capitalization of past-due amounts constitutes a modification or a refinance. *See id.* at 13. However, according to the Court, that question did not address the real issue. The Court explained:

> *The applicability of … all of Section 50(a)(6)*, which governs home
> equity loans, depends not on whether the transaction is a modification

or a refinance but on whether it is an "extension of credit". *If the restructuring of a home equity loan does not involve a new extension of credit, the requirements of Section 50(a)(6) do not apply.*

*Id.* at 15 (emphasis added). The Court then restated the first question as follows:

1. After an initial extension of credit, if a home equity lender enters into a new agreement with the borrower that capitalizes past-due interest, fees, property taxes, or insurance premiums into the principal of the loan but neither satisfies nor replaces the original note, is the transaction *a new extension of credit* for purposes of section 50 of Article XVI of the Texas Constitution?

*Id.* (emphasis in original). The Court answered that question by providing the following three-pronged test for determining whether a restructuring constitutes a new extension of credit:

[T]he restructuring of a home equity loan that … [1] does not involve the satisfaction or replacement of the original note, [2] an advancement of new funds, or [3] an increase in the obligations created by the original note, is not a new extension of credit that must meet the requirements of Section 50.

*Id.* at 17. The Court's answer to the first certified question in *Sims* is clear: if a restructuring of a home equity loan does not do any of the three things specified in the Court's extension-of-credit test, it is not a new extension of credit and none of the requirements of Section 50(a)(6) apply to the restructuring.[3]

Appellants do not even attempt to argue that their modifications met any of the prongs in *Sims*. In fact, their brief is devoid of any discussion of, or even

---

[3] The Court went on to explain: "Our reasons for answering the first question as we have largely dictate our answers to the other three certified questions." *Sims*, 440 S.W.3d at 17.

19

reference to, the three prongs. In any event, it is undisputed that Appellants'

modifications were not new extensions of credit under the *Sims* test.

With regard to the first prong, Appellants' Loan Modification Agreements

state that they "amend[] and supplement[]" the respective Notes and Security

Instruments. CR:245, 302. They also provide:

> All covenants, agreements, stipulations, and conditions in the Note
> and Security Instrument shall be and remain in full force and effect,
> except as herein modified, and none of the Borrower's obligations or
> liabilities under the Note and Security Instrument shall be diminished
> or released by any provisions hereof, nor shall this Agreement in any
> way impair, diminish, or affect any of Lender's rights under or
> remedies on the Note and Security Instrument, whether such rights or
> remedies arise thereunder or by operation of law.

CR:246, 303. Finally, the Loan Modification Agreements expressly state:

"*Nothing in this Agreement shall be understood or construed to be a satisfaction or*

*release in whole or in part of the Note and Security Instrument*." CR:246, 303

(emphasis added). Thus, under their express terms, the Loan Modification

Agreements did not satisfy and replace Appellants' Notes.

The modifications also failed to satisfy the second prong of the *Sims* test

because the only amounts capitalized were past-due amounts under the original

terms of the loans. Those amounts included past-due interest under the Notes and

escrow advances made pursuant to section 9 of the Security Instruments. CR:206.

Thus, the modifications did not advance additional funds. *See Sims*, 440 S.W.3d at

17 (holding that capitalization of past-due interest, escrow items, and fees is not an

20

advance of additional funds because such amounts "were among the obligations assumed by the borrower under the terms of the original loan").

Likewise, the modifications did not satisfy *Sims*'s third prong by increasing obligations created by the original notes. For example, the modifications did not make the liens security for another indebtedness, impose personal liability on Appellants, eliminate the requirement of a court order for foreclosure, convert the loans into open-end accounts that could be debited from time to time or under which credit could be extended from time to time, impose a prepayment penalty, require additional security beyond the existing liens, or trigger default upon a decline in market value. CR:245-46, 302-03. The modifications simply restructured Appellants' existing obligations in a way that resolved their defaults and enabled them to avoid foreclosure.

Because the modifications were not new extensions of credit, none of the requirements in Section 50(a)(6)—including those in Section 50(a)(6)(L)—apply to them. *See Sims*, 440 S.W.3d at 15 ("If the restructuring of a home equity loan does not involve a new extension of credit, the requirements of Section 50(a)(6) do not apply."). Thus, the modifications had no effect on the loans' compliance with Section 50(a)(6)(L), which was established on the dates the loans were made.

This conclusion is supported by the Fifth Circuit's opinion in *Hawkins*. In that case, one of the loan modifications "allowed interest-only payments during the

first five years following the modification. At the conclusion of this five-year period, JPMC would re-amortize the loan." *Hawkins*, 2015 WL 3505353, at *1. In analyzing whether the modification violated Section 50(a)(6)(L), the Fifth Circuit turned to the Texas Supreme Court's answer to the first certified question in *Sims*. *See id.* at *2 (finding that *Sims* was "a similar case presenting similar claims"). Finding that the modification did not satisfy the prongs in the *Sims* extension-of-credit test, the Fifth Circuit concluded that "the restructurings of these loans were modifications, which do not require compliance with Section 50(a)(6)." *Id.*[4]

Appellants would have this court ignore *Sims* and its extension-of-credit test for an alternative interpretation of the Texas Constitution for which they cite no authority and which is directly contradicted by *Sims*. According to Appellants, the applicability of Section 50(a)(6)'s requirements turns not on whether a restructuring is a new extension of credit, as the Texas Supreme Court explicitly held in *Sims*, but on whether the requirement is one that, in Appellants' view, is a "one-time event[] at closing" or "perpetual for the life of the loan." Brief of Appellants at 18.

---

[4] The *Hawkins* case also involved a modification that provided for a balloon payment of $146,102.76 due at the end of the loan. 2015 WL 3505353, at *2. Because the court was not able to determine on the record whether the balloon payment represented an increase in the obligations created by the original note, the court vacated and remanded the dismissal of that borrower's claims for a determination of whether the modification fell under the third prong of the *Sims* test. *Id.* at *3. Here, the record is clear that all capitalized amounts were due and owing at the time of the modifications, and there are no scheduled balloon payments due at the end of Appellants' loans.

There are at least three problems with Appellants' argument. *First*, they cite no supporting authority. *See generally* Brief of Appellants at 18-21. *Second*, it is in direct conflict with the Texas Supreme Court's conclusion that "nothing in Section 50 suggests that a loan's compliance is to be determined at any time other than when it is made." *Sims*, 440 S.W.3d at 17 n.28. *Third*, the examples Appellants give of so-called "perpetual" requirements are already addressed by the third prong of the *Sims* test, which inquires whether the modification increases the obligations under the original note. For instance, converting a non-recourse loan into a recourse loan obviously increases the obligations under the original note. *See* Brief of Appellants at 19; TEX. CONST. art. XVI, § 50(a)(6)(D). Similarly, the obligations under the original note would increase if a modification eliminated the borrower's protection against foreclosure without a court order, converted the loan into an open-end account that could be debited from time to time or under which credit could be extended from time to time, or imposed a prepayment penalty. *See* Brief of Appellants at 19-20; TEX. CONST. art. XVI, §§ 50(a)(6)(C), (F), and (G). Thus, if a modification were to do any of these things, it would fall under the third prong of the *Sims* test, would be a new extension of credit, and would be subject to the requirements of Section 50(a)(6).

In contrast to the examples just discussed, the obligations under the original note are not increased when a modification restructures the repayment schedule to

give a struggling borrower temporary reprieve by providing a period of time during which the interest rate is lowered and the borrower is allowed to pay only the interest accruing each month, followed by a return of the interest rate and amortization schedule to the terms set forth in the original note. If anything, such modifications *decrease* the obligations under the original note.

In summary, the Texas Supreme Court in *Sims* explicitly conditioned the application of all of Section 50(a)(6)'s requirements on whether a restructuring constitutes a new extension of credit. The Court provided a three-part test for determining whether a restructuring is a new extension of credit and held that, if the restructuring does not satisfy any part of that test, the requirements of Section 50(a)(6) do not apply. The fact that Appellants' modifications did not meet any part of the *Sims* extension-of-credit test is undisputed. Thus, the requirements of Section 50(a)(6), including Section 50(a)(6)(L), do not apply to the modifications. Because Appellants' sole claim for declaratory judgment is premised on the modifications having allegedly violated a constitutional provision that does not apply to the modifications, their claim fails as a matter of law, and the pretrial court was correct to enter a take-nothing summary judgment against Appellants.

## C. APPELLANTS' MODIFICATIONS COMPLY WITH SECTION 50(a)(6)(L), TO THE EXTENT IT APPLIES

Even if this court were to conclude that *Sims* does not dispose of this case and that Section 50(a)(6)(L) does apply to Appellants' modifications (which it does

not), the judgment should still be affirmed because the modifications complied with that provision.

Appellants contend that the modifications did not comply with Section 50(a)(6)(L) because they provided for temporary interest-only payments and because the monthly payments after the interest-only period were more than twice the interest-only payments.[5] CR:174-75. Appellants argue that "[i]nterest-only schedules of payments that pay no principal violate Section 50(a)(6)(L)" and that "balloons anywhere in the payment schedule of more than twice the average monthly payment that came before … likewise violate Section 50(a)(6)(L)." CR:176. These contentions are without merit because they ignore the plain language of Section 50(a)(6)(L) and the principles set forth in *Sims*. They also misapply the administrative interpretation on which they rely.

The Texas Constitution must be interpreted in a way that gives effect to its plain language, "rely[ing] heavily on the literal text." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 586 (Tex. 2013); *Harris Cnty. Hosp. Dist. v. Tomball*,

---

[5] Appellants also suggest that Nationstar has "confessed" or "admitted" in letters to various borrowers that modifications such as Appellants violate the Texas Constitution. *See* Brief of Appellants at 7, 9-10, 31. That is not correct. The courts, not Nationstar, are the ones who determine the proper interpretation of the Texas Constitution. A party cannot be held to have admitted a legal issue. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries*, 844 S.W.2d 857, 858-59 (Tex. App.—Texarkana 1992, writ denied) ("A deemed admission of a purely legal issue is of no effect."). Because Appellants' modifications were legal under the Texas Constitution, any mistaken opinion by Nationstar to the contrary is immaterial.

283 S.W.3d 838, 842 (Tex. 2009); *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000). The plain language and the literal text of Section 50(a)(6)(L) permit payments that "*equal*[] or exceed[] the amount of accrued interest as of the date of the scheduled installment[.]" TEX. CONST. art. XVI, § 50(a)(6)(L)(i) (emphasis added). Therefore, payments that equal the amount of accrued interest—*i.e.*, interest-only payments—are expressly permitted.

On pages 23 and 24 of their brief, Appellants cite dicta from *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781 (5th Cir. 2010), arguing that each installment must include some amount of principal payment.[6] However, the Fifth Circuit did not address the issue of interest-only payments in *Cerda*. *See Cerda*, 612 F.3d at 789-90. Instead, the Fifth Circuit addressed variable-rate loans. *Id.* *Cerda* is also distinguishable because it dealt with an alleged violation of Section 50(a)(6)(L) that occurred when the extension of credit was made, not when the extension of credit was subsequently restructured. *See id.* at 783-84. Thus, Section 50(a)(6)(L) applied in *Cerda*. It does not apply here for the reasons given in *Sims*.

---

[6] In its opinion, the Fifth Circuit quoted the Regulatory Commentary on Equity Lending Procedures, which were non-binding, advisory opinions by certain state agencies regarding the interpretation of Section 50(a)(6). *See Cerda*, 612 F.3d at 791; *see also Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 585 (Tex. 2013) (calling the Regulatory Commentary "advisory"). But even if that interpretation conformed to a later, authorized interpretation by those same agencies, it still is not binding and is not subject to any greater deference than would be an interpretation by another court of appeals. *Norwood*, 418 S.W.3d at 585.

More importantly, *Cerda* is unavailing to Appellants because an interpretation of Section 50(a)(6) "must give effect to the constitutional text[.]" *Norwood*, 418 S.W.3d at 585. Any interpretation of Section 50(a)(6)(L) that suggests that every payment must reduce the principal by some amount is directly at odds with the plain text of Section 50(a)(6)(L), which, as explained above, expressly allows payments that "*equal* … the amount of accrued interest as of the date of the scheduled installment[.]" TEX. CONST. art. XVI, § 50(a)(6)(L)(i) (emphasis added).[7]

Nothing in the Texas Constitution prohibits a lender from temporarily reducing defaulting borrowers' monthly payments so they can keep their homes and meet their payment obligations while working through financial hardships. *See Sims*, 440 S.W.3d at 16 (approving of "a mechanism for deferring payment of obligations already owed in a way that allows the borrower to retain his home"). As summarized in *Sims*:

> Fundamentally, the requirements of Article XVI, Section 50 of the Texas Constitution for extensions of credit secured by the homestead are designed to protect the homestead, not endanger it. The Constitution does not prohibit the restructuring of a home equity

---

[7] Of course, Nationstar is not arguing that *all* scheduled payments on home equity loan can be interest-only. Any interest-only period on a home equity loan must be of a temporary duration (as they were with Appellants' modifications); otherwise, the entire principal amount would be due in a lump sum at maturity, thereby violating the "substantially equal" requirement in Section 50(a)(6)(L). Nevertheless, Section 50(a)(6)(L) explicitly allows *some* scheduled payments to be interest-only as long as the loan, as a whole, is fully amortized.

loan that already meets its requirements in order to avoid foreclosure while maintaining the terms of the original extension of credit.

*Id.* at 18.[8]

Like the Simses, Appellants would have this court overlook the fact that the lower interest rates and interest-only periods enabled them to keep their homes and meet their payment obligations while dealing with financial hardships. *See id.* at 17 ("The Simses argue that it matters not that, as in their own situation, restructuring … makes it possible for borrowers to keep their homes and meet their obligations."). However, the Texas Supreme Court does not see it that way. The Court approves of such restructurings because they are consistent with the fundamental purpose of the Texas Constitution's homestead protections: to protect against the loss of a homestead due to foreclosure. *See id.* (warning that arguments such as the Simses made, and which Appellants make in this case, "encourage[] lenders to foreclose, which is certainly at odds with the fundamental purpose of Section 50: to protect the homestead").

_____

[8] Appellants read this language in *Sims* to mean that a modification cannot change the terms of the original extension of credit except to capitalize past-due amounts and adjust the regular installment amount by lowering the interest rate. *See* Brief of Appellants at 15-16. However, that reading is inconsistent with the core holding of *Sims*, which, as discussed above, is that the application of Section 50(a)(6) depends solely on whether the restructuring is a new extension of credit. The Texas Supreme Court's reference to "maintaining the terms of the original extension of credit" must be read consistently with the rest of its opinion. To read *Sims* consistently, "maintaining the terms of the original extension of credit" must be synonymous with not "increas[ing] the obligations created by the original note[.]" *Sims*, 440 S.W.3d at 17, 18.

28

The modifications into which Nationstar and Appellants entered accomplished the fundamental purpose of the Texas Constitution's homestead protections by helping Appellants keep their homes by curing their defaults through the capitalization of past-due amounts and by temporarily lowering their interest rates and allowing them to make interest-only payments for a two-year period. Once Appellants' interest-only periods ended, their interest rates went back to what they had been prior to the modifications. *Compare* CR:245 *with* CR:209; *compare also* CR:302 *with* CR:268. And because past-due amounts had been capitalized as part of the modifications, Appellants' post-interest-only period payments were only slightly more than the pre-modification payments. *Compare* CR:266 *with* CR:210; *compare also* CR:321 *with* CR:269. Thus, the payments were, overall, substantially equal.

In any event, Appellants either misunderstand or misapply the administrative interpretations upon which they rely. *See* Brief of Appellants at 21-23 (citing 7 TEX. ADMIN. CODE §§ 153.1(1), 153.11(3), and 153.16(2)). According to those interpretations, Section 50(a)(6)(L) "prohibits balloon payments" and a "balloon" is defined as "an installment that is more than an amount equal to twice the average of all installments scheduled before that installment." 7 TEX. ADMIN. CODE §§ 153.1(1), 153.11(3). However, even assuming *arguendo* that these

29

interpretations guide the analysis of what constitutes substantially equal payments under Section 50(a)(6)(L), it does not help Appellants' cause.[9]

For instance, Graze's monthly principal and interest payment for the first 85 months of his loan was $1,896.21.[10] CR:210. During his 24-month interest-only period, it was $493.27. CR:245. Thus, the average of *all* scheduled installments before Graze's first post-interest-only payment was $1,587.31. Criddle's monthly principal and interest payment for the first 52 months of her loan was $824.88.[11] CR:269. During her 24-month interest-only period, it was $177.42. CR:302.

---

[9] Interpretations of the Texas Constitution's home equity provisions by the administrative agencies authorized to interpret them are subject to *de novo* review by the courts and need not be given any deference except to the extent that they create a safe harbor for practices consistent with the interpretations. *See Norwood*, 418 S.W.3d at 585. Thus, a lender cannot be liable under the Texas Constitution for failing to comply with an administrative interpretation unless it is first determined that the interpretation is correct. Here, Appellants' reliance on the administrative interpretation of Section 50(a)(6)(L) and the corresponding administrative definition of "balloon" is misplaced because Section 50(a)(6)(L) says nothing about balloon payments. The term "balloon" is not found anywhere in the text of the home equity provisions of the Texas Constitution. *See generally* TEX. CONST. art. XVI, §§ 50(a)(6), 50(e)-(j), 50(q)-(r), 50(u). All that Section 50(a)(6)(L) requires is that, when a home equity loan is made, it be scheduled to be repaid "in *substantially equal* successive periodic installments, not more often than every 14 days and not less often than monthly, beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment[.]" TEX. CONST. art. XVI, § 50(a)(6)(L)(i).

[10] Graze's first payment date was November 1, 2003, and the first payment under the modification was on December 1, 2010. CR:209, 245. There are 85 months from November 2003 through November 2010.

[11] Criddle's first payment date was February 1, 2007, and the first payment under the modification was on June 1, 2010. CR:268, 302. There are 52 months from February 2007 through May 2010.

Thus, the average of *all* scheduled installments before Criddle's first post-interest-only payment was $620.42. Graze's post-interest-only payment amount of $2,159.70 and Criddle's post-interest-only payment amount of $910.42 were, therefore, less than "twice the average of *all* installments scheduled before that installment." 7 TEX. ADMIN. CODE § 153.1(1) (emphasis added).

Thus, to the extent that Section 50(a)(6)(L) even applies to the modifications (which, as explained above, it does not), the modifications complied with that provision. This is yet another basis on which the MDL pretrial court's judgment can and should be affirmed.

**D. ANY NON-COMPLIANCE WITH SECTION 50(a)(6)(L) WAS CURED LONG BEFORE APPELLANTS FILED THIS LAWSUIT**

Finally, even if the interest-only periods provided by Appellants' loan modifications were subject to Section 50(a)(6)(L) (which they were not), and did not comply with that provision (which they did), any such non-compliance was cured long before Appellants filed suit.

Non-compliance with Section 50(a)(6)(L) may be cured by "sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section[.]" TEX.

31

CONST. art. XVI, § 50(a)(6)(Q)(x)(c).  By the very terms of this cure provision, such a notice is not an offer to cure, it is itself the cure.

On September 3, 2012, Nationstar sent Graze a written notice stating that, beginning with the December 1, 2012 payment, his interest-only period would end, his interest rate would be modified from 2.000 percent to 6.500 percent, and his monthly principal and interest payment would be modified from $493.27 to $2,159.70, which was a fully amortizing principal and interest payment.[12]  CR:266. Nationstar sent a similar written notice to Criddle on March 5, 2012, advising her that, beginning with the June 1, 2012 payment, her interest-only period would end, her interest rate would be modified from 2.000 percent to 9.190 percent, and her monthly principal and interest payment would be modified from $177.42 to $910.42, which was also a fully amortizing principal and interest payment.[13] CR:321.

To the extent that Nationstar was required to "cure" any non-compliance with Section 50(a)(6)(L) as a result of the interest-only periods and temporary

---

[12] Graze's maturity date was October 1, 2033, so there were 251 months remaining on the loan (December 1, 2012 through October 1, 2033).  CR:209, 245.  As of December 1, 2012, the unpaid principal balance was $295,961.53.  CR:248.  The amount of equal, fully amortized monthly principal and interest payments for a principal balance of $295,961.53 at a rate of 6.500 percent over 251 months is $2,159.70.  CR:206.

[13] Criddle's maturity date was January 1, 2037, so there were 284 months remaining on the loan (June 1, 2012 through January 1, 2037).  CR:268, 302.  As of June 1, 2012, the unpaid principal balance was $106,453.51.  CR:307.  The amount of equal, fully amortized monthly principal and interest payments for a principal balance of $106,453.51 at a rate of 9.190 percent over 284 months is $910.42.  CR:207.

interest-rate reductions provided by the modifications, these notices clearly provided that cure by notifying Appellants that their respective payment schedules were being modified in such a way that their remaining payments would be "substantially equal, … not more often than every 14 days and not less often than monthly, … each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment[.]"  TEX. CONST. art. XVI, § 50(a)(6)(L)(i). Thus, even if the modifications were subject to but did not comply with Section 50(a)(6)(L), any such non-compliance was cured well before Appellants filed their respective lawsuits in May 2013.[14]

For this additional reason, the MDL pretrial court's summary judgment should be affirmed.

**E.     APPELLANTS CANNOT RECEIVE JUDGMENT ON NATIONSTAR'S CURE DEFENSE BECAUSE THEY DID NOT REQUEST SUMMARY JUDGMENT ON THAT DEFENSE IN THE PRETRIAL COURT**

In Appellants Prayer for Relief, they ask this court to not only reverse the pretrial court's summary judgment, but to also render judgment in their favor on Nationstar's affirmative defense that it cured any violation of Section 50(a)(6)(L). *See* Brief of Appellants at 31.  As an initial matter, Appellants' request should be denied because Nationstar's cure defense has merit.  *See supra* § D.  Furthermore,

---

[14] In *Doody v. Ameriquest Mortgage Co.*, the Texas Supreme Court held that a lender can cure a failure to comply before receiving notice from the borrower of the failure to comply.  49 S.W.3d 342, 345 (Tex. 2001).

Appellants did not request such relief in the MDL pretrial court, so they cannot be granted that relief on appeal. *See* Brief of Appellants at 12.

Appellants' reliance on Texas Rule of Appellate Procedure 43.3 is misplaced. That rule requires an appellate court to "render the judgment that the trial court should have rendered" except in certain circumstances. TEX. R. APP. P. 43.3. The MDL pretrial court could not and, therefore, should not have rendered judgment on Nationstar's cure defense because it was never asked to do so by Appellants. Thus, Rule 43.3 does not support Appellants' argument for rendered judgment.

Furthermore, an appellant must have sought final judgment relief in a cross-motion for summary judgment in order to have judgment rendered in his or her favor on appeal. *See Montgomery v. Blue Cross Blue Shield of Texas, Inc.*, 923 S.W.2d 147, 152 (Tex. App.—Austin 1996, writ denied) ("Before an appellate court may reverse summary judgment for one party and render judgment for the other party, all parties must have sought final judgment relief in their cross-motions for summary judgment."). Appellants did not file a cross-motion for summary judgment in the pretrial court, *see* Brief of Appellants at 12, so they are not entitled to a rendered judgment by this court.

**F.     APPELLANTS' ARGUMENTS ARE AT ODDS WITH THE FUNDAMENTAL PURPOSE OF SECTION 50 OF THE TEXAS CONSTITUTION**

"Fundamentally, the requirements of Article XVI, Section 50 of the Texas Constitution for extensions of credit secured by the homestead are designed to protect the homestead, not endanger it." *Sims*, 440 S.W.3d at 18. Thus, it matters that Appellants' modifications made it possible for them to keep their homes and meet their obligations. *Id.* at 17. Practical solutions such as providing borrowers with temporary payment relief to deal with a financial hardship should be encouraged because they provide "a mechanism for deferring payment of obligations already owed in a way that allows the borrower to retain his home." *Id.* at 16. The homestead protections found in Section 50 of the Texas Constitution were never intended to prevent lenders and defaulting borrowers from working out solutions that allow the borrowers to keep their homestead while preserving the same obligations that existed under the original extension of credit.

The modifications at issue in this case clearly fulfilled the purpose of Section 50. They also did not include any "teaser" rates or payment shocks. As illustrated in the charts provided in Nationstar's Statement of Facts above, the modifications provided Appellants with a temporary period of reduced payments followed by a return to normal amortized payments at the same interest rates as before the modifications. The parties could have simply capitalized the past-due amounts and left the interest rate alone, thereby requiring Appellants to make

35

higher payments immediately. By providing Appellants with a two-year interest-only period at a reduced rate, Nationstar gave Appellants the chance to recover from their hardships and avoid another default.

Like the Simses' arguments, Appellants' arguments in this case encourage lenders to foreclose rather than work with borrowers to save their homesteads. Such arguments clearly are "at odds with the fundamental purpose of Section 50: to protect the homestead." *Id.* They should, therefore, be rejected.

## **PRAYER**

WHEREFORE, Nationstar respectfully requests that the Court affirm the MDL pretrial court's judgment.

Respectfully submitted,


*/s/ Daron L. Janis*

B. David L. Foster
  Texas Bar No. 24031555
  *dfoster@lockelord.com*
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas  78701
(512) 305-4700
(512) 305-4800 – Facsimile

Thomas G. Yoxall
  State Bar No. 00785304
  *tyoxall@lockelord.com*
W. Scott Hastings
  State Bar No. 24002241
  *shastings@lockelord.com*
Daron L. Janis
  State Bar No. 24060015
  *djanis@lockelord.com*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
(214) 740-8000
(214) 740-8800 – Facsimile

COUNSEL FOR APPELLEE

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certifies that this brief complies with the length limitations of Rule 9.4(i) and the typeface requirements of Rule 9.4(e).

1.     Exclusive of the contents excluded by Rule 9.4(i)(1), this brief (including textboxes, footnotes, and endnotes) contains 6,532 words as counted by the Word Count function of Microsoft Word 2010.

2.     This Brief has been prepared in proportionally spaced typeface using:

Software:   Microsoft Word 2010
Typeface:   Times New Roman
Font Size:   14 point (footnotes in 13 point)

*/s/ Daron L. Janis*
Daron L. Janis

## CERTIFICATE OF SERVICE

I certify that on July 6, 2015, I am electronically filing this document through the electronic filing service provider, efile.txcourts.gov (the "EFSP"). Based on the EFSP's records, the EFSP will transmit a Notification of Service containing a link to the filed brief to the following individual(s):

J. Patrick Sutton (jpatricksutton@jpatricksuttonlaw.com)
Jeffrey W. Hurt (jwhurt@hurtberry.com)
COUNSEL FOR APPELLANTS

*/s/ Daron L. Janis*
Daron L. Janis

No. 03-15-00329-CV

In the
# Third District Court of Appeals
Austin, Texas

GREGORY G. GRAZE AND CYNTHIA A. CRIDDLE, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Appellants,*

V.

NATIONSTAR MORTGAGE, LLC,

*Appellee.*

*Appeal from the 261st Judicial District Court, Travis County, Texas*
*MDL Pretrial Court Cause No. D-1-GN-14-005248*
*Originating from the 160th Judicial District Court, Dallas County, Texas*
*Originating Court Cause No. DC-13-05406*
*MDL Cause No. 13-0427*

## APPENDIX

Tab

Final Judgment and Order Granting Defendant's Motion for Summary
Judgment ............................................................................................................A

Graze's Texas Home Equity Note .........................................................................B

Graze's Loan Modification Agreement ..................................................................C

Letter from Nationstar to Graze dated September 3, 2012 .....................................D

Criddle's Texas Home Equity Note........................................................................E

Criddle's Loan Modification Agreement................................................................ F

Letter from Nationstar to Criddle dated March 5, 2012 ........................................G

# Tab A

Filed in The District Court
of Travis County, Texas
MAY 2 0 2015
At          4:00          P          M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-005248

MDL NO. 13-0427

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| NATIONSTAR MORTGAGE, LLC | § | TRAVIS COUNTY, TEXAS |
| TEXAS HOME EQUITY LOAN | § | |
| MODIFICATION LITIGATION. | § | 261ST JUDICIAL DISTRICT |

*Transferred from*
CAUSE NO. DC-13-05406

| | | |
|---|---|---|
| GREGORY G. GRAZE AND | § | IN THE DISTRICT COURT OF |
| CYNTHIA A. CRIDDLE, on behalf of | § | |
| themselves and all others similarly | § | |
| situated, | § | |
| *Plaintiffs,* | § | DALLAS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| NATIONSTAR MORTGAGE LLC, | § | |
| *Defendant.* | § | 160TH JUDICIAL DISTRICT |

## FINAL JUDGMENT AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On May 12, 2015, came on for hearing before the Court *Defendant's Motion for Summary Judgment* (the "Motion"). Having considered the Motion, the response thereto, the reply in support thereof, the evidence, the arguments of counsel, and all other material properly before the Court, the Court concludes that Nationstar Mortgage LLC ("Defendant") is entitled to judgment as a matter of law.

It is therefore **ORDERED** that the Motion is **GRANTED**. It is **FURTHER ORDERED** that Plaintiffs Gregory Graze and Cynthia A. Criddle ("Plaintiffs") shall take nothing from Defendant.

This is a final, appealable judgment that disposes of all claims in this case.



004037286



388

D-1-GN-14-005248

SIGNED this _____ day of May, 2015.

_____
THE HONORABLE LORA LIVINGSTON

APPROVED AS TO FORM:

_____
J. Patrick Sutton
  State Bar No. 24058143
  *jpatricksutton@jpatricksuttonlaw.com*
THE LAW OFFICE OF J. PATRICK SUTTON
1706 W. 10th Street
Austin, Texas 78703
(512) 417-5903
(512) 355-4155 – Facsimile

Jeffrey W. Hurt
  State Bar No. 10317055
  *jwhurt@hurtberry.com*
HURT & BERRY, LLP
10670 N. Central Expy Suite 450
Dallas, Texas 75231
(214) 382-5656
(214) 382-5657 – Facsimile

COUNSEL FOR PLAINTIFFS

389

B. David L. Foster
  State Bar No. 24031555
  *dfoster@lockelord.com*
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas  78701
(512) 305-4700
(512) 305-4800 – Facsimile

Thomas G. Yoxall
  Texas Bar No. 00785304
  *tyoxall@lockelord.com*
Daron L. Janis
  State Bar No. 24060015
  *djanis@lockelord.com*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
(214) 740-8000
(214) 740-8800 – Facsimile

COUNSEL FOR DEFENDANT

390

# Tab B

■■■3588

**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),**
**ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY NOTE
## (Fixed Rate - First Lien)

SEPTEMBER 18, 2003                    DALLAS, TX   75201
[Date]                          (City)                    [State]

6722 ORCHID LANE, DALLAS, TX 75230
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $         300,000.00         (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is         CTX MORTGAGE COMPANY, LLC

. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         6.500         %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the         1st         day of each month beginning   NOVEMBER 1 2003         . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   OCTOBER 1, 2033         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P.O. BOX 199400
   DALLAS, TX   75219-9077         or at a different place if required by the Note Holder.

---

TEXAS HOME EQUITY NOTE (Fixed Rate - First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®-8D35(TX) (0008)         Form 3244.1 1/01
Page 1 of 4         Initials: HH
   VMP MORTGAGE FORMS - (800)521-7291

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $       1,896.21   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

## 5. LOAN CHARGES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges, or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment. *My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.*

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity, prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    10    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of my default under any indebtedness not evidenced by this Note or the Security Instrument.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Initials: *HMM*

VMP-8035(TX) (0008)           Page 2 of 4           Form 3244.1 1/01

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

-8035(TX) (0008)    Page 3 of 4    Form 3244.1 1/01

MDL Nationstar_Graze 000003
D.Appx. 10

## 11. APPLICABLE LAW

This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

## 12. NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____ (Seal)    _____ (Seal)
GREGORY G. GRAZE            -Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

*[Sign Original Only]*

-8035(TX) (0008)    Page 4 of 4    Form 3244.1 1/01

## ALLONGE TO NOTE

LOAN NUMBER:            ███ 3588

ALLONGE TO NOTE DATED:        9/18/2003

IN FAVOR OF:

    CTX Mortgage Company

**AND EXECUTED BY:**

    **GREGORY G. GRAZE**

PAY TO THE ORDER OF
    **Centex Home Equity Company, LLC**

_____

**WITHOUT RECOURSE**

    **CTX MORTGAGE COMPANY**

BY: _Karen Renner_
    **Karen Renner**

**TITLE:  DOCUMENT SIGNER**

**MDL Nationstar_Graze 000005**
D.Appx. 12

## ALLONGE TO NOTE

LOAN NUMBER: ██████3588

ALLONGE TO NOTE DATED: 9/18/2003

IN FAVOR OF:

    CTX Mortgage Company

**AND EXECUTED BY:**

    **GREGORY G. GRAZE**

PAY TO THE ORDER OF

_____

_____

**WITHOUT RECOURSE**

    **CENTEX HOME EQUITY COMPANY, LLC**

BY: _Karen Renner_

    Karen Renner

**TITLE: DOCUMENT SIGNER**

# Tab C

_____ [Space Above This Line For Recording Data] _____

Loan #: ███ 3588

# LOAN MODIFICATION AGREEMENT
### (Providing for Interest Only Payments and Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this    18th day of October, 2010  , between    Gregory G. Graze ("Borrower") and Nationstar Mortgage LLC   formerly known as Centex Home Equity Company    ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated   September 18, 2003   and recorded in Book or Liber _____, at page(s) _____, of the
_____ Records of _____
(Name of Records)                                              (County and State, or other Jurisdiction)
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

6722 Orchid Lane Dallas Tx 75230
(Property Address)

the real property described being set forth as follows:

        In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of   December 01, 2010  , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $   295,961.53  , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of   2  %, from   November 01, 2010 .  Borrower promises to make monthly payments of interest of U.S. $   493.27  , beginning on the    1st day of December, 2010  , and continuing thereafter on the same day of each succeeding month until   November 01, 2012   (the "Interest Only Period").  Thereafter, Borrower shall make payments of principal and interest of U.S. $   2,159.71   based on the yearly rate of   6.5  %, which will remain in effect until principal and interest are paid in full.  If on   October 01, 2033   (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. Failure to Timely Remit Payments:  If at any time during the effective dates of this Modification Agreement the Borrower fails to timely make payments as specified hereinabove and such default or failure continues for more than thirty (31) days, then this Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed.  Time is of the essence with regard to all payments specified hereunder.  Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall be construed as a waiver of any of Lender's rights or remedies thereby created.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

6. Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_____ (Seal)
Nationstar Mortgage LLC -Lender

_____ (Seal)
Gregory G. Graze -Borrower

By: _____

_____ (Seal)
-Borrower

STATE OF TX                        )
                                   )SS.
COUNTY OF Dallas                   )

On  the  18  day  of  October , 2010 . personally  appeared  before  me
_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal
_____
Notary Public

My appointment expires: _____

BELLA RAHLIS
Notary Public
STATE OF TEXAS
My Comm. Exp. 07-09-13

_____ [Space Below This Line for Acknowledgements] _____

# Tab D



Nationstar
MORTGAGE

350 Highland Drive
Lewisville, TX 75067

0-692-64969-0000119-001-000-000-000-000

GREGORY GRAZE
6722 ORCHID LN
DALLAS TX 75230-4137

**Important Information
Please open immediately**

September 3, 2012

Re: Modification Agreement Expiration
    Nationstar Mortgage LLC Loan Number: ████3588

Dear Borrower:

On 10/19/2010, we or your former financial institution, agreed to modify your interest rate to 2.000% and your principal and interest payment to $493.27. That modification agreement expires 12/01/2012.

Beginning with the payment due 12/01/2012, your Principal and Interest amount will be $2159.70 and your interest rate will be 6.500%.

If you have any questions, or believe that this change will cause you financial hardship, please contact us at   1-888-811-5279 .

Sincerely,

Nationstar Mortgage LLC
Customer Service Department

**P.S. If you have any questions, please call  1-888-811-5279 Monday
through Friday between 8 a.m. and 7 p.m. (CST) and
Saturday between 8 a.m. and 12 p.m. (CST).**

**Visit us online at www.MyNationstarMtg.com**

*This is an attempt to collect a debt and any information obtained may be used for that purpose.*
MEXP



D.Appx. 65

# Tab E

**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY NOTE
## (Fixed Rate - First Lien)

| DECEMBER 21, 2006 | | LEWISVILLE, TX 75067 | |
|---|---|---|---|
| [Date] | [City] | | [State] |

2705 BRUSHY CREEK TRAIL, MESQUITE, TX 75181
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $       100,800.00       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

NATIONSTAR MORTGAGE LLC

. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       9.190       %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the       1st       day of each month beginning   FEBRUARY 1 2007       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JANUARY 1, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P.O. BOX 199400
   DALLAS, TX 75219-9077       or at a different place if required by the Note Holder.

**TEXAS HOME EQUITY NOTE (Fixed Rate-First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP-8035(TX) (0310)
Page 1 of 4
VMP Mortgage Solutions (800)521-7291

Form 3244.1 1/01
(rev. 10/03)
Initials: CRC
CAC

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $    824.88    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

## 5. LOAN CHARGES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges, or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder will make this refund by making a payment to me. **The Note Holder's payment of any such refund will extinguish right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document may be reformed by written notice from the Note Holder without the necessity of the execution of any new amendment or new document by me.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    10    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of my default under any indebtedness not evidenced by this Note or the Security Instrument.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

 -8035(TX) (0310)

Page 2 of 4

Initials: _CBC_/_CAC_
Form 3244.1 1/01 (rev. 10/03)

MDL Nationstar_Criddle 000002
D.Appx. 68



**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

## 9. WAIVERS

**I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.**

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MDL Nationstar_Criddle 000003
D.Appx. 69

## 11. APPLICABLE LAW

This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

## 12. NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]



_____ (Seal)
CHARLES A. CRIDDLE                -Borrower

_____ (Seal)
CYNTHIA A. CRIDDLE                -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_[Sign Original Only]_

-8035(TX) (0310)                 Page 4 of 4                 Form 3244.1 1/01 (rev. 10/03)

MDL Nationstar_Criddle 000004
D.Appx. 70

# ALLONGE TO NOTE

LOAN NUMBER: ████ 3090

ALLONGE TO NOTE DATED: 12/21/2006

LOAN AMOUNT: 100,800.00

PROPERTY ADDRESS:

2705 BRUSHY CREEK TRAIL
MESQUITE, TEXAS 75181

IN FAVOR OF:

NATIONSTAR MORTGAGE LLC

AND EXECUTED BY:

CHARLES A. CRIDDLE
CYNTHIA A. CRIDDLE

PAY TO THE ORDER OF:

WITHOUT RECOURSE:

NATIONSTAR MORTGAGE LLC

BY: _____
Keith Gary

TITLE: Assistant Vice President

DATE: 1-8-07

MUDAOKA (111204)

**MDL Nationstar_Criddle 000005**

D.Appx. 71

# Tab F

LOAN MODIFICATION AGREEMENT — Cap Fixed(Temp IO)                   04/27/2010   (page 1 of 3)

_____ [Space Above This Line For Recording Data] _____

Loan #: ███████3090

# LOAN MODIFICATION AGREEMENT
### (Providing for Interest Only Payments and Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this   27th day of April, 2010  , between   Charles A. Criddle  and Cynthia A. Criddle  ("Borrower") and Nationstar Mortgage LLC   ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated  December 21, 2006  and recorded in Book or Liber _____, at page(s) _____, of the _____ Records of _____

      (Name of Records)                                      (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

2705 Brushy Creek Trail Mesquite Tx 75181
(Property Address)

the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of   June 01, 2010 , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 106,453.51 , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of  2 %, from   May 01, 2010 . Borrower promises to make monthly payments of interest of U.S. $  177.42 , beginning on the  1st day of June, 2010 , and continuing thereafter on the same day of each succeeding month until  May 01, 2012  (the "Interest Only Period"). Thereafter, Borrower shall make payments of principal and interest of U.S. $ 910.43  based on the yearly rate of  9.19 %, which will remain in effect until principal and interest are paid in full. If on January 01, 2037  (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. <u>Failure to Timely Remit Payments:</u> If at any time during the effective dates of this Modification Agreement the Borrower fails to timely make payments as specified hereinabove and such default or failure continues for more than thirty (31) days, then this Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed. Time is of the essence with regard to all payments specified hereunder. Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall be construed as a waiver of any of Lender's rights or remedies thereby created.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

MDL Nationstar_Criddle 000032  302

D.Appx. 101

LOAN MODIFICATION AGREEMENT— Cap Fixed(Temp IO)          04/27/2010   (page 2 of 3)

Loan #: ████ ██90

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_____ (Seal)
Nationstar Mortgage LLC-Lender

By: _____

STATE OF Texas    )
                )SS.
COUNTY OF Dallas    )

_deceased_____ (Seal)
Charles A. Criddle -Borrower

_Cynthia A. Criddle_ (Seal)
Cynthia A. Criddle -Borrower

On the 28th day of April 2010, personally appeared before me Cynthia A. Criddle personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Sarah M. Williams_
Notary Public          My appointment expires: 2/17/2013

_____ [Space Below This Line for Acknowledgements] _____

SARAH M. WILLIAMS
Notary Public
State of Texas
My Comm. Exp. 02-17-2013

MDL Nationstar_Criddle 000033   303

D.Appx. 102

# Tab G



350 Highland Drive
Lewisville, TX 75067

0-692-59944-0000326-001-000-000-000-000

**Important Information
Please open immediately**

CHARLES CRIDDLE
CYNTHIA CRIDDLE
2705 BRUSHY CREEK TRL
MESQUITE TX 75181-1543

March 5, 2012

Re: Modification Agreement Expiration
Nationstar Mortgage LLC Loan Number: ████3090

Dear Borrower:

On 05/05/2010, we or your former financial institution, agreed to modify your interest rate to 2.000% and your principal and interest payment to $177.42. That modification agreement expires 06/01/2012.

Beginning with the payment due 06/01/2012, your Principal and Interest amount will be $910.42 and your interest rate will be 9.190%.

If you have any questions, or believe that this change will cause you financial hardship, please contact us at 1-888-811-5279 .

Sincerely,

Nationstar Mortgage LLC
Customer Service Department

**P.S. If you have any questions, please call 1-888-811-5279 Monday
through Friday between 8 a.m. and 7 p.m. (CST) and
Saturday between 8 a.m. and 12 p.m. (CST).**

**Visit us online at www.MyNationstarMtg.com**

*This is an attempt to collect a debt and any information obtained may be used for that purpose.*



D.Appx. 120